HENRY FRIESNER v. THE COMMON COUNCIL OF THE
CITY OF CHARLOTTE.

*Local option—Sufficiency of petitions for election—Determination
of board of supervisors—Constitutional law.*

Certain provisions of Act No. 207, Laws of 1889, commonly called
the "Local Option Law," are construed as follows:

*a*—If the petitions presented to the county clerk praying
that an election be held are accompanied by transcripts of the
poll lists of the last preceding general election, as provided in
section 4 of the act, the fact that the petitioners whose names
appear upon the poll lists still reside within their respective
townships, wards, or election districts must be shown by the
affidavit or affidavits of one or more resident electors thereof,
upon his or their own knowledge; but if such transcripts do
not accompany the petitions, the affidavit or affidavits need
only state that the persons whose names are attached to the
petitions are, to the best of affiant's knowledge and belief,
qualified electors in such township, ward, or election district,
which implies a residence within the township.

*b*—The purpose of the provision in section 6 of the act,
making the determination by the board of supervisors that the
election has been prayed for by the requisite number of electors
final as to the sufficiency of the petitions and the requisite
number of electors signing the same, was to place the result,
when once reached by the people, beyond controversy or col-
lateral attack, which power it was competent for the Legis-
lature to confer upon the board, under article 4, § 38, of the
Constitution.

*Mandamus.* Argued May 3 and 4, 1892. Denied May
11, 1892.

Relator applied for *mandamus* to compel the approval
of a liquor bond. The facts are stated in the opinion.

*J. M. C. Smith (F. A. Baker,* of counsel), for relator.
*Van Zile & Robson,* for respondent.

PER CURIAM. The petitioner asks for a *mandamus* to compel the respondent to approve his bond as a retail liquor dealer, setting out in his petition that the people of Eaton county had voted for the prohibition of the liquor traffic, under Act No. 207, Laws of 1889, commonly called the "Local Option Law." The relator sets up certain alleged irregularities in the action taken preliminary to the vote, and also alleges that in one township, Oneida, the township board failed to divide the township into election districts, as required by Act No. 190, Laws of 1891. It cannot be held, however, that this neglect of duty by the officers of the township shall result in disfranchising the voters. Furthermore, if the entire vote of Oneida be excluded, there would still be left an overwhelming majority in favor of prohibition.

The principal questions raised relate to the proceedings anterior to the election. Section 3 of the act provides that the county clerk shall,—

"Upon written application and petition filed with him, and addressed to the board of supervisors of the county, signed by not less than one-fourth, of all the qualified electors thereof, as shown by the poll lists or returns and canvass of the last preceding general election for State officers held in the several townships, * * * call a special meeting of such board of supervisors in the manner hereinafter set forth."

Section 4 provides that—

"To enable the county clerk to ascertain that the petitioners thus praying for such an election are qualified electors of such county, and that they constitute at least one-fourth of all the electors of such county, as shown by the poll lists of the returns and canvass of the last preceding general election, it is hereby required that the signatures of all the petitioners residing in any one and the same township, ward, or election district shall be attached to one petition or list. * * * Every such petition shall be accompanied by a transcript of the poll list, if it can be procured, of the last preceding

general election held in such township, ward, or election district, certified as correct by the township, city, or county clerk, as the case may require, and also an affidavit or affidavits by one or more resident electors of such township, ward, or election district, stating therein that he or they are personally acquainted with said petitioners, and know that they reside within such township, ward, or election district, and that the signatures are the genuine signatures of the persons signing the petition, and of the persons whose names severally appear upon such transcript of the poll list; or, if such transcript shall not have been procured, then that the persons whose names are attached to said petition are, to the best of his knowledge and belief, qualified electors in such township, ward, or election district: *Provided*, however, that if for any reason a certified transcript of any poll list shall not have been produced, or if such transcript shall be defective, it shall be sufficient if the whole number of all the petitioners is equal to one-fourth of the number of all the qualified electors of such county, as shown by the returns or county canvass of the last preceding general election."

The poll lists were not attached to the several petitions presented to the county clerk in the present case, but the petition was accompanied by an affidavit, in form as follows:

"A. B., being duly sworn, doth say that he is personally acquainted with each and every one of the persons whose names are above subscribed to the annexed and foregoing petition, and knows that the signatures are the genuine signatures of the persons signing the said petition, and that the persons whose names are so attached to said petition are, to the best of deponent's knowledge and belief, qualified electors in the town of ——, in said county of Eaton."

The criticism which is made upon this affidavit is that it does not state that the affiant knows that the petitioners reside within the township. A careful reading of this section convinces us that this is not required. Two states of things are provided for by the statute. If the petition is accompanied by a poll list, this is not, of

itself, sufficient to show that the petitioner is, at the date of signing the petition, a resident of the township. Hence it is required that, in addition to showing that the petitioners' names appear upon the poll list, it must be shown, in case the poll list is used, that the petitioners still reside within the township, to the knowledge of the affiant. But the language of the statute is plain that, if such transcript shall not have been procured, the affidavit shall then state that the persons whose names are attached to said petition are, to the best of affiant's knowledge and belief, qualified electors in such township, ward, or election district, which, of course, implies a residence within the township.

It is alleged that the affidavit accompanying the petition from the township of Walton was sworn to before a deputy township clerk, who had no power to administer an oath; and also that the petition from the township of Oneida was not acted upon by the board of supervisors, and, in fact, was not before the board at the time the action providing for an election was taken. But, if both these petitions are excluded, there appeared upon the face of the petitions a sufficient number of names to authorize the county clerk to call the board of supervisors, and to authorize the board of supervisors to act upon them.

It is also alleged that the names of 52 of the petitioners did not appear upon the poll lists, and, upon information and belief, that they were not qualified voters in their several districts. The answer denies the averment that they were not qualified voters in their several wards. It is claimed that if these 52 names were excluded, and the petitions from the townships of Oneida and Walton are likewise excluded, the number of petitioners would not be one-fourth of the qualified voters of the county. But, as already stated, upon the face of the petitions

the number appeared to be sufficient; and section 6 of the act provides that, at the meeting of the board of supervisors,—

"It shall be the duty of the county clerk to lay before them the petitions filed in his office praying for such election, and when, upon examination, it shall appear to said board, upon the face of said petitions, and by the transcripts of the poll lists, or by reference to the returns and canvass of the last general election, that such election has been prayed for by the requisite number of electors, as hereinbefore provided, they shall by resolution determine and declare to that effect; and such determination shall be final as to the sufficiency of the petitions, and the requisite number of electors signing the same; and they shall thereupon issue an order directing that such election be held in and for such county."

Acting under the authority of this section, the board of supervisors did make the determination required by law. Having obtained jurisdiction of the subject-matter by the call of the county clerk, and by petitions the validity of which appears, signed by a sufficient number to authorize the county clerk to act, the determination of the board is, as we think, wisely made final. This power it was competent for the Legislature to confer upon the board of supervisors. See article 4, § 38, Const.[1]

The plain purpose of this provision was to place the result, when once reached by the people, beyond controversy or collateral attack. As it would be competent to call an election of the voters of the county, or indeed to have named in the statute a day for an election to be held, it is likewise competent to empower the board to determine when the prerequisite facts exist which shall authorize them to call an election of the people. This

---

[1] This section declares that the Legislature may confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such powers of a local, legislative, and administrative character as they may deem proper.

having been done, and the people having acted, their action is made final.

The writ will be denied.

McGRATH, J., did not sit.