F. C. FORRESTER *et al. v.* CITY OF MEMPHIS,

and

J. L. CRAIG *et al. v.* CITY OF MEMPHIS.

(*Nashville.* December Term, 1928.)

Opinion filed April 13, 1929.

J. G. REASONOVER, J. S. PILCHER and W. B. CAMPBELL PILCHER, for complainants, appellants.

E. B. KLEWER and WALTER CHANDLER, for defendant, appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Chapter 790 of the Private Acts of 1919 purported to extend the corporate limits of the City of Memphis; and the City of Memphis levied and collected taxes on property located within the corporate limits thus extended. The constitutionality of this statute having been questioned, chapter 1 of the Private Acts of 1925 was enacted, extending the city limits so as to include the same territory embraced in the provisions of the Act of 1919.

Chapter 442 of the Private Acts of 1925 further extended the corporate limits of the City of Memphis, so as to include within the city limits property contiguous to that described in chapter 1 of the Private Acts of 1925 and chapter 790 of the Private Acts of 1919.

These suits were instituted to recover from the City taxes paid on the property included within the Act of 1919, and to enjoin the assessment and collection of taxes on the property included within the two acts of 1925.

Chapter 442 of the Private Acts of 1925 is assailed as unconstitutional because the property described therein is not contiguous to the city limits, as they existed at the time said act was passed. If either the Acts of 1919 or chapter 1 of the Private Acts of 1925, is constitutional and valid, then the criticism of chapter 442 fails, since the property described in the two earlier amendments is the property lying between that described in chapter 442 and the city limits previously existing.

The chancellor held chapter 790 of the Private Acts of 1919 unconstitutional, upon demurrer, and no assignments of error are directed at his holding on that proposition.

Two questions are made on the constitutionality of chapter 1 of the Private Acts of 1925. It is insisted that the act is void because the subject is not expressed in the

caption or title, so as to conform to the constitution, article 2, section 17; and that the act was not passed on three legislative days in each House of the General Assembly, as required by the constitution. It is further insisted that while this statute purports to have been signed by the Governor on January 9, 1925, it was not returned by the Governor to the General Assembly until January 12, 1925, and was, therefore, not a valid enactment on January 10, so as to authorize an assessment for taxes for the year 1925.

The title of chapter 1 of the Private Acts of 1925 is: "A bill to be entitled, an Act to amend the charter of the City of Memphis, and all Acts amendatory thereof, so as to define the corporate limits of the City of Memphis, in Shelby County, Tennessee."

The chancellor correctly treated the word "define," as used in the caption, as equivalent to declare, fix or establish, and held that provisions extending, restricting, or changing the city limits were germane to the purpose so expressed in the caption. The authorities cited by the chancellor clearly support his conclusion. *Re Board of Commissioners of Johnson County*, 4 Wyo., 32; *Commissioners* v. *Bailey*, 13 Kan., 600; *Walters* v. *Richardson*, 93 Ky., 374, 20 S. W., 279; *People* v. *Bradley*, 36 Mich., 447; *Wallace* v. *Ferguson* (Ore.), 141 Pac., 542; *State* v. *Bartholomew*, 176 Ind., 91; *State* v. *Hooker*, 36 Fla., 358, 18 So., 767; *Dill* v. *Murphy*, 15 Eng. Rep. (Reprint), 784.

It is contended that the constitutional requirement that the subject of the act be stated in the caption is not complied with in a statute of this character, unless the caption indicates the particular territory to be added to or taken from a municipal corporation. In support of

this contention it is argued that a charter amendment, under such a title, might pass two readings in the General Assembly, containing provisions affecting one area, and, after amendment, pass third reading and become a law with provisions affecting an entirely distinct and different area of land.

The argument just stated would be equally applicable to any statute, with a caption framed in general as distinguished from restricted language, materially amended upon third reading. It is, however, well settled that the identity of a statute is determined by its caption, and that if the subject expressed in the caption be single, any amendment germane thereto may be introduced into the bill at any time prior to its third and final reading and passage. *Railroad* v. *Memphis,* 126 Tenn., 267, 292-293, and cases there cited; *Erwin* v. *State,* 116 Tenn., 80.

To hold that an act amending a city charter so as to extend the corporate limits must indicate in its caption the particular area to be included within the city, would do violence to the long list of decisions construing the provision of the constitution which requires that the subject of legislation be stated in the caption. Many of these cases are collected by Mr. Shannon in his Annotated Constitution, pp. 224-225. More recent cases are *Hunter* v. *Conner,* 152 Tenn., 258, 277 S. W., 71; *Wilson* v. *State,* 143 Tenn., 55, 224 S. W., 168; *Petty* v. *Phoenix Cotton Oil Co.,* 150 Tenn., 292, 264 S. W., 353; *House* v. *Creveling,* 147 Tenn., 589, 250 S. W., 357.

We are referred to *Village of Fairview* v. *City of Detroit,* 150 Mich., 1, 113 N. W., 368, as sustaining the position of the appellants on this point. In that case it was held that a statute which purported in its caption to be an act annexing the entire territory composing the Village

of Fairview to the City of Detroit was not correctly or constitutionally captioned, when the body of the act annexed only a part of the territory designated in the caption, leaving a part of the village outside the city limits.

The case cited does not support the position of the appellants here. The effect of the decision was to hold the caption misleading and deceptive, and, therefore, not stating the purpose expressed in the body of the act. A similar conclusion was reached by this court in *Harris et al.* v. *Rush et al.*, 157 Tenn., 295. The principle involved is that if the caption be made narrow and restricted, the body of the act must be equally restricted, although a broader and more comprehensive caption would have been permissible.

The caption of chapter 442 of the Private Acts of 1925 is identical with the caption of chapter 1, except that the word "extend" is used instead of the word "define." The authorities cited clearly sustain the sufficiency of this caption.

The Senate Bill, which was enacted as chapter 1 of the Private Acts of 1925, was introduced and passed on first reading in the Senate on the day fixed by the constitution for the meeting of the General Assembly, the first Monday in January. The Journal of the House of Representatives for that day recites that the House of Representatives was called to order on the same day, and that a quorum of the membership duly qualified, following which an adjournment was ordered until the following day, Tuesday, January 6. The organization of the House of Representatives was completed by the election of a speaker and other officers on Tuesday.

It is contended that the Senate could not constitutionally pass a bill on first reading, or take any other legislative action, until the House of Representatives had completed its organization, and both Houses of the General Assembly were ready to perform their constitutional functions.

In *Johnson City* v. *Tennessee Eastern Electric Co.*, 133 Tenn., 632, 646, this court said: "A session of the General Assembly is an entirety within the meaning of our constitution. If it be a regular session its beginning is fixed by the constitution, section 8 article 6 and the session terminates when both houses composing it shall have adjourned *sine die.*"

The Senate Bill in question was introduced and passed on its first reading in the Senate on a day fixed by the constitution for the meeting of the General Assembly. Both Houses of the General Assembly are shown by their respective journals to have assembled on that day for the constitutional session. A quorum of each house was present. Notwithstanding a custom for each house to postpone the commencement of its legislative functions until receiving formal notice of the organization of the other house, no sound reason has been suggested to us why the legislative acts of one house should be held void because of a delay in the organization of the other. No constitutional inhibition restrained the Senate from proceeding, and we must decline to hold its action void because the House of Representatives had not then elected a speaker. Both houses were in session on the day fixed by the constitution, and the session of the General Assembly had begun, notwithstanding the House of Representatives had not elected its officers. We see no merit in the contention of the appellants.

██ We also agree with the chancellor in his holding that chapter 1 of the Private Acts of 1925 must be deemed to have become effective on the day it purports to have been approved by the Governor.

The constitution, article 3, section 19, provides:

"Every bill which may pass both houses of the general assembly, shall before it becomes a law, be presented to the governor for his signature. If he approve, he shall sign it, and the same shall become a law; but if he refuse to sign it, he shall return it with his objections thereto, in writing, to the house in which it originated."

The act, as it appears of record in the office of the Secretary of State, contains the endorsement of the Governor as having been approved on January 9, 1925. The Senate Journal recites that it was returned by the Governor to the Senate, with his approval, on Monday, January 12, 1925.

It is contended that the act became a law only when it left the possession and control of the Governor, by being returned to the General Assembly on January 12. As authority for this position we are referred to *People ex rel. Partillo* v. *McCullough*, 210 Ill., 488, 71 N. E., 602. It was there held that notwithstanding the Governor had endorsed his approval on a bill which had been presented to him by the general assembly, either through inadvertence or otherwise, his subsequent action in changing his approval to disapproval, before the bill left his desk, was effective, and the bill did not become a law. There is nothing in the opinion to indicate that an act, held on the governor's desk for several days after receiving his approval, does not become effective as of the date it received the governor's approval.

The rule in this State, under the present constitution, is that a legislative enactment, approved by the Governor, becomes a law at the date approved. *Hill* v. *State,* 73 Tenn., 725, 729; *Logan* v. *State,* 50 Tenn. (3 Heisk.), 442; *Memphis* v. *United States,* 97 U. S., 293, 24 L. Ed., 920. It is not required by the constitution that a bill, once approved by the Governor, be returned to the General Assembly. It is rather contemplated by the constitution that such a bill be transmitted by the Governor to the Secretary of State, since it is the constitutional duty of the Secretary of State to "keep a fair register of all the official acts and proceedings of the governor." (Constitution, article 3, section 17.)

The provision of the constitution, article 3, section 18, above quoted, is: "If he approve, he shall sign it, and the same shall become a law." No further legislative action is necessary, and a legislative act preserved in the office of the Secretary of State, authenticated by the signatures of the two Speakers, and by the signature of the Governor, with the date of his approval, should be given every presumption of verity, and this should extend to the date of approval endorsed thereon by the Governor.

Although it appears that the original act, bearing the endorsement of the Governor, was returned to the General Assembly, that body was nothing more than the means adopted by the Governor for the transmission of the act to its proper place of record, the office of the Secretary of State, and the date it was returned to the General Assembly is of no legal importance. It is sufficient that the bill was approved by the Governor within the number of days fixed by the constitution, and it became a law when approved.

Finding no constitutional objection to chapter 1 of the Private Acts of 1925, chapter 442 of the Private Acts of that year must also be sustained; and the chancellor was correct in holding that the complainants were not entitled to the injunctive relief prayed.

With regard to the taxes collected by the City under the Act of 1919, prior to the Acts of 1925, we agree with the chancellor that the averments of the bill in the Forrester case place the complainants in no substantially different position from that occupied by the complainants in *Prescott* v. *Memphis,* 154 Tenn., 462, 285 S. W., 587, 48 A. L. R., 1378; and we think the chancellor correctly sustained the demurrer of the City to this portion of the bill on the authority of that case. See also the authorities collected in note to the report of the case in 48 A. L. R., 1378, and *Carr* v. *Memphis,* 22 Fed. (2d), 678.

The decree of the chancellor in each of the two causes is accordingly affirmed.